IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| POLAR ENERGY (JERSEY) LIMITED and W² LIMITED | § § § | CIVIL ACTION NO. |
| *Plaintiffs*, | § § § § | |
| vs. | § § § | JUDGE |
| GLOBAL GAS & REFINING LIMITED and PK MARSYM (BERMUDA) LTD., | § § § § | MAGISTRATE |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT FOR
## DECLARATORY JUDGMENT & DAMAGES

NOW COMES Plaintiffs, Polar Energy (Jersey) Limted and W² Limited, who file the following Original Complaint for Declaratory Judgment & Damages against Defendants, Global Gas & Refining Limited and PK Marsym (Bermuda) Ltd. and would show the Court as follows:

### I.  PARTIES

**1.**

Plaintiff, Polar Energy (Jersey) Limited ("Polar"), is a limited liability company organized under the laws of the Channel Islands with its principal place of business being the State of Texas.

**2.**

Plaintiff, W2 Limited ("W²"), is a limited liability company organized under the laws of the Cayman Islands with its principal place of business being the State of Texas.

**3.**

Defendant, Global Gas & Refining Limited ("Global"), is a limited liability company organized under the laws of the Federal Republic of Nigeria with its principal place of business also being the Federal Republic of Nigeria. Upon information and belief, Global's corporate headquarters are located at 20 Ewo Road, GRA, Phase II, Port Harcourt, Rivers State, Nigeria. However, Global also maintains an office in the United States at 777 Post Oak Blvd., Suite 850, Houston, Texas 77056. Global has not acquired a certificate of authority to do business in Texas.

**4.**

Defendant, PK Marsym (Bermuda) Limited ("PKM"), is a limited liability company organized under the laws of Bermuda, whose registered office is at Milner House, 18 Parliament Street, Hamilton HM12, Bermuda. Upon information and belief, PKM's principal place of business is the Federal Republic of Nigeria.

## II. JURISDICTION

**5.**

This Honorable Court has diversity jurisdiction over the above styled proceeding under 28 U.S.C. § 1332 because complete diversity exists and the matter in controversy exceeds the sum of $75,000.

## III. VENUE

**6.**

Venue is proper in this Honorable Court under 28 U.S.C. § 1391(b)(2) and (3). A substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district. Additionally, there is no other judicial district in which an action may otherwise be brought and

Global, who currently maintains an office within this district, is subject to the personal jurisdiction of this Honorable Court.

## IV. DECLARATORY JUDGMENT

**7.**

Plaintiffs request for a declaratory judgment is made pursuant to 28 U.S.C.A. § 2201 for the purpose of determining a question of actual controversy between the parties as more fully set forth herein.

## V. FACTUAL BACKGROUND

### A. *The Letter Agreement, First Secured Promissory Note and Deed of Trust*

**8.**

In May 2011, Global approached Polar, an affiliate of Waller Marine, Inc. ("WMI"), regarding assistance with a natural gas project in the Niger Delta of Nigeria (hereinafter the "Delta Project"). Specifically, Global had executed certain gas supply agreements with various suppliers in the Niger Delta and was in the process of negotiating other similar agreements. However, Global needed help with funding and technical project solutions concerning the processing and monetization of the natural gas it was being provided. Polar (or another nominated WMI entity, which ultimately became W²) agreed to provide both in exchange for an equity ownership in the Delta Project.

**9.**

In a nutshell, the Delta Project involved processing the natural gas supplied in a facility, located in the Cawthorne Channel of Rivers State, Nigeria, and pipelining the resulting natural gas liquids to a nearby refrigerated floating storage and offloading vessel, the M/S SYMPHONY (hereinafter "SYMPHONY" or "Vessel"), for storage. Upon information and belief, Global had

control over and use of the SYMPHONY under an agreement with PKM, the registered owner of the SYMPHONY, and had previously operated the SYMPHONY in its past gas processing operations, as it was connected to the Cawthorne Channel processing facility by pipeline.

**10.**

On or about June 13, 2011, Polar, Global and PKM executed a letter of agreement ("LOA"). The LOA is attached hereto as Exhibit "A." Under the LOA, Polar agreed to advance funds to Global in the amount of $5 million. *See* Ex. "A," p. 1. The $5 million advance was to be made in two installments of $2,500,000 each. *Id*., p. 1.

**11.**

The LOA provided that this transaction shall be memorialized through the execution of a secured promissory note in the amount of $5 million. *Id*. Accordingly, a Secured Promissory Note (hereinafter the "First Note"), in the amount of $5,000,000, was also executed by and between Polar and Global on or about June 13, 2011. The First Note is attached hereto as Exhibit "B."

**12.**

The first advance of $2,500,000.00 was paid to Global on or about June 13, 2011. This advance was to be used for the payment of past due salaries for Nigerian employees and invoices from vendors, as well as a cash reserve for travel and related expenses, working capital and other general corporate purposes. *See* Ex. "A," p 1.

**13.**

The second advance of $2,500,000.00 was paid to Global and PKM on or about June 27, 2011. This advance was to be used to pay off the existing vessel mortgagee of the

SYMPHONY, which was owned by PKM. *Id*. This arrangement allowed PKM to pledge the SYMPHONY to Polar as collateral for its $5,000,000 loan to Global.

**14.**

In fact, the LOA specifically provided that PKM agreed to execute a Deed of Trust ("Deed") pledging the SYMPHONY as security for repayment of the funds advanced by the First Note. *Id.* The Deed, which is attached hereto as Exhibit "C," was executed by both PKM, as guarantor of the First Note and owner of the SYMPHONY, and Global, as the indebted borrower, on or about June 13, 2011. Under the Deed, PKM conveyed legal title in the SYMPHONY to Polar. *See* Ex. "C," p. 2, Transfer of Rights in the Property. Polar is both the Lender and Trustee under the Deed.

**15.**

Under the Deed, Global was required to prevent any liens from accruing on the Vessel which may attain priority over the Deed. *See* Ex. "C," p. 4, para. 3.

**16.**

The First Note provides that "[i]nterest shall accrue on all outstanding principal from the date of this note at a rate per annum equal to Prime Rate *plus* two percent (2.0%)." *See* Ex. "B," p. 2, para. 4 (emphasis in the original).

### B. *The Second and Third Secured Promissory Notes*

**17.**

As indicated above, W² was specifically formed to act as the entity that would provide both technical knowledge and additional funds for the future development of the gas delivery site, as well as the construction of gas treatment plants and floating power plants to monetize the gas under the existing and proposed gas supply agreements.

**18.**

On or about August 11, 2011, another Secured Promissory Note (hereinafter the "Second Note"), in the amount of $250,000, was executed by and between W² and Global, and a respective advance of $250,000 was paid to Global on or about August 19, 2011. The Second Note is attached hereto as Exhibit "D."

**19.**

Additionally, on or about August 22, 2011, a third Secured Promissory Note (hereinafter the "Third Note"), in the amount of $1,000,000, was executed by and between W² and Global. The respective advance of $1,000,000 was paid to Global on or about August 19, 2011. The Third Note is attached hereto as Exhibit "E."

**20.**

Both the Second and Third Notes provide that "[i]nterest shall accrue on all outstanding principal from the date of this note at a rate per annum equal to Prime Rate *plus* two percent (2.0%)." *See* Ex. "D," p. 2, para. 4; and Ex. "E," p. 2, para. 4 (emphasis in the original).

**21.**

An additional advance of $200,000 was paid to Global on or about October 26, 2011.

**22.**

In total, Polar and W² have collectively loaned Global and PKM $6,450,000.

**C.** *The Maturity Date and Defendants' Default*

**23.**

The First, Second and Third Notes all include a maturity date of December 31, 2011 for the loans made to Global. *See* Ex. "B," para. 1(h); Ex. "D," para. 1(h); and Ex. "E," para. 1(h).

**24.**

However, on or about August 30, 2011, the parties agreed to extend the maturity dates of the three secured promissory notes and the Deed from December 31, 2011 to June 1, 2012.  *See*, *e.g.*, Ex. "F," Joint Venture Closing Agreement ("JVCA"), paras. 9.3 and 10.3, as well as Exhibit "E" to the JVCA, Global Gas and Refining Limited Performance Guarantee.

**25.**

The maturity date for all three secured promissory notes, June 1, 2012, has now come and gone and neither Global nor PKM has repaid the principal and interest they owe Plaintiffs. Global is now in default under all three promissory notes.  *See* Ex. "B," para. 6(a); Ex. "D," para. 6(a); and Ex. "E," para. 6(a).

**26.**

In the event of default, the First Note states in pertinent part:

> Upon the occurrence of any Event of Default, (x) the Payee may at any time declare all unpaid Obligations to be immediately due and payable *without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower*; (y) the Payee may exercise all rights and remedies available to the Payee hereunder ***and under the Deed of Trust*** and applicable law….

*See* Ex. "B," para. 6(e) (emphasis added).

**27.**

Additionally, in the event of default, the Second and Third Notes state in pertinent part:

> Upon the occurrence of any Event of Default, (x) the Maker may at any time declare all unpaid Obligations to be immediately due and payable *without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower*; (y) the Maker may exercise all rights and remedies available to the Maker hereunder and under the Security Agreement and applicable law….

*See* Ex. "D," para. 6(e); and Ex. "E," para. 6(e) (emphasis added).

**28.**

Nevertheless, on June 1, 2012, Plaintiffs demanded payment from Global and PKM, but no response has been received.  *See* Ex. "G," Correspondence on behalf of Plaintiffs to PKM and Global with signed proof-of-delivery receipts**.**

**29.**

Of even greater concern is the fact that, on or about June 7, 2012, Plaintiffs learned that PKM is currently negotiating with a third party (upon information and belief OOCL) to sell the SYMPHONY, in contravention of its guarantee to Polar via the Deed and conveyance of legal title to the SYMPHONY to Polar.

### D.  *Polar's Right to Legal Title of the SYMPHONY, As Well As To Foreclose Upon And Sell the Vessel*

**30.**

The Deed provides that PKM "irrevocably grants and conveys to Trustee [Polar], in trust, with power of sale, the property identified in Exhibit 1 [the SYMPHONY]."  *See* Ex. "C," p. 2, Transfer of Rights in the Property.

**31.**

The Deed further provides that Polar holds "legal title" to the SYMPHONY and has "the right to foreclose and sell the [SYMPHONY]."  *See Id*.

**32.**

Specifically, the Deed states that "[i]f Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of the sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law.  Lender shall mail a copy of the notice to Borrower and Owner in the manner prescribed by Applicable Law.  Sale shall be made at a public venue."  *Id*., p. 13, para. 17.

**33.**

Additionally, the Deed provides that "[i]f the [SYMPHONY] is sold pursuant to this Section [of the Deed], Borrower [Global], Owner [PKM] or any other person holding possession of the Property through Borrower or Owner shall immediately surrender possession of the [SYMPHONY] to the purchaser at that sale." *Id*., pp. 13 – 14, para. 17.

**34.**

Furthermore, the Deed expressly provides that Polar shall be entitled to collect all expenses, including, but not limited to, attorneys' fees in its pursuit of the remedies provided by the Deed. *Id*., p. 13, para. 17. In this regard, the Deed also provides as follows: "[i]f…[Global] fails to perform the covenants and agreements contained in this [Deed]… then [Polar] may do and pay for whatever is reasonable or appropriate to protect [Polar's] interest in the [SYMPHONY] and rights under this [Deed], including…securing…the [SYMPHONY]. [Polar's] actions can include, but are not limited to…(b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the [SYMPHONY] and rights under this [Deed]." <u>*See Id*</u>., pp. 6 – 7, para. 6. Moreover, "[Polar] may charge [Global] fees for services performed in connection with [Global's] default, for the purpose of protecting [Polar's] interest in the [SYMPHONY] and rights under this [Deed], including but not limited to, attorneys' fees…." <u>*See Id*</u>., p. 9, para. 10.

## VI. CAUSES OF ACTION

### A. *Polar Is Entitled To A Declaratory Judgment*

**35.**

Plaintiffs incorporate the above numbered paragraphs 1 – 34 as if fully set forth here.

**36.**

Considering Defendants' respective failure to repay the funds lent to them under the LOA, First Note, Second Note, Third Note and Deed, which total $6,450,000, or respond to Plaintiffs' demand letter of June 1, 2012, as well as PKM's recent attempt to sell the SYMPHONY, despite the fact that legal title has been conveyed to Polar via the Deed, an actual controversy exists between the parties.

**37.**

Accordingly, Polar hereby respectfully requests a declaratory judgment that:

(i) Polar holds legal title to the Symphony per the applicable terms of the Deed.

(ii) Polar is entitled to immediately foreclose upon and sell the SYMPHONY without further judicial involvement or assistance.

(iii) PKM does not hold legal title to the SYMPHONY and therefore cannot legally sell, or otherwise encumber, the SYMPHONY.

(iv) Global, PKM and/or any other possessor of the SYMPHONY are hereby directed to immediately surrender control and possession of the Vessel to Polar. PKM shall further surrender to Polar any and all documentation and information relating to the Vessel within its possession.

(v) Defendants are hereby required and directed to pay any and all outstanding liens on the SYMPHONY in order to ensure a clean and unencumbered title for Polar.

(vi)   Any amounts expended by Polar, including reasonable attorneys' fees, to bring this action and appear in court to protect its interest in the SYMPHONY and/or its rights under the Deed shall be considered an additional debt owed by Global and PKM to Polar under the terms and conditions of the Deed.

### B. *The Defendants Have Breached All Applicable Contracts Between the Parties*

**38.**

Plaintiffs incorporate the above numbered paragraphs 1 – 34 as if fully set forth here.

**39.**

The LOA, First Note, Second Note, Third Note and Deed are all enforceable contracts under the laws of the State of Texas.

**40.**

Polar and W², as signatories to their respective contracts, are the proper parties to sue for breach of the aforementioned contracts.

**41.**

The Plaintiffs have fully performed their respective obligations under the aforementioned contracts.

**42.**

Global and PKM, in its role as guarantor, have breached the express terms of the aforementioned contracts through their failure to repay the outstanding principal and interest accrued by the agreed upon maturity date of June 1, 2012.

**43.**

Defendants' breaches of the aforementioned contracts have caused Plaintiffs injury.

**44.**

Along with all other damages to which Plaintiffs are justly entitled, Plaintiffs further seek to recover all reasonable costs and attorney's fees in accordance with Texas law and the aforementioned contracts. Indeed, Article 12 of the First, Second and Third Notes provides as follows:

> Expenses; Waiver. If action is instituted to collect this Note, the Borrower [Global] promises to pay on demand all costs and expenses, including reasonable attorneys' fees and costs, incurred in connection with such action. The Borrower hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument. The Borrower shall reimburse Payee for all costs and expenses, including without limitation, reasonable attorneys' fees and disbursement expended or incurred in the negotiation, documentation, execution and delivery of this Note and the Deed of Trust and the transactions contemplated hereby and thereby to a maximum of $100,000.

*See* Ex. "B," para. 12; Ex. "D," para. 12; and Ex. "E," para. 12.

### VII.　CONDITIONS PRECEDENT

**45.**

All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

### VIII.　PRAYER FOR RELIEF

**46.**

Considering the foregoing dispute between Polar, PKM and Global, Polar is entitled to a declaratory judgment from this Honorable Court stating as follows:

(i)　Polar holds legal title to the Symphony per the applicable terms of the Deed.

(ii)　Polar is entitled to immediately foreclose upon and sell the Symphony without further judicial involvement or assistance.

(iii) PKM does not hold legal title to the Symphony and therefore cannot legally sell, or otherwise encumber, the Symphony.

(iv) Global, PKM and/or any other possessor of the SYMPHONY are hereby directed to immediately surrender control of the Vessel to Polar. PKM shall further surrender to Polar any and all documentation and information relating to the Vessel within its possession.

(v) Defendants are hereby required and directed to pay any and all outstanding liens on the SYMPHONY in order to ensure a clean and unencumbered title for Polar.

(vi) Any amounts expended by Polar, including reasonable attorneys' fees, to bring this action and appear in court to protect its interest in the SYMPHONY and/or its rights under the Deed shall be considered and additional debt owed by Global and PKM to Polar under the terms and conditions of the Deed.

**47.**

Plaintiffs are also entitled to a judgment from this Honorable Court declaring Defendants to be in breach of the LOA, First Note, Second Note, Third Note and Deed, as applicable and awarding Plaintiffs all outstanding damages remaining after the sale of the SYMPHONY. This award of damages should include all unpaid portions of the principal balance of $6,450,000, interest, reasonable costs and attorneys' fees, as well as all other damages, both direct and consequential, which Plaintiffs may be entitled to as a matter of law or equity.

**WHEREFORE,** Plaintiffs pray that, upon trial hereof, they obtain all available relief and recover all damages sustained, both direct and consequential, from Global and PKM, including attorney's fees, court costs and all other damages and/or relief, including the declaratory judgment sought herein, to which Plaintiffs show themselves justly entitled.

- 14 -

        Respectfully submitted,

        LEBLANC BLAND P.L.L.C.

        /s/ David S. Bland
        DAVID S. BLAND
        Attorney-in-charge
        Texas Bar No. 00789021
        SDTX Bar No. 32550
        1717 St. James Place, Suite 360
        Houston, Texas 77056
        Telephone: (713) 627-7100
        Facsimile: (504) 627-7148
        dbland@leblancbland.com

**Of Counsel:**
BRIAN J. COMARDA
Texas Bar No. 24055332
SDTX Bar No. 705516
1717 St. James Place, Suite 360
Houston, Texas 77056
Telephone: (713) 627-7100
Facsimile: (504) 627-7148
bcomarda@leblancbland.com

Attorneys for Plaintiffs, Polar Energy (Jersey) Limited and W2 Limited